## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ASOCIACIÓN CULTURAL Y DEPORTIVA DEL GALLO FINO DE PELEA, ÁNGEL MANUEL ORTIZ DÍAZ, JOHN J. OLIVARES YACE, ÁNGEL LUIS NARVÁEZ RODRÍGUEZ, AND JOSÉ MIGUEL CEDEÑO** Plaintiffs | |
| **v.** | **Case No.** |
| **PRESIDENT DONALD TRUMP IN HIS OFFICIAL CAPACITY, UNITED STATES OF AMERICA, ATTORNEY GENERAL WILLIAM P. BARR IN HIS OFFICIAL CAPACITY, UNITED STATES DEPARTMENT OF JUSTICE, SECRETARY OF AGRICULTURE SONNY PERDUE IN HIS OFFICIAL CAPACITY, AND UNITED STATES DEPARTMENT OF AGRICULTURE** Defendants | |

## VERIFIED COMPLAINT

**COME NOW** the plaintiffs Asociación Cultural y Deportiva Del Gallo Fino de Pelea, Ángel Manuel Ortiz Díaz, John J. Olivares Yace, Ángel Luis Narváez Rodríguez, and José Miguel Cedeño by and through the undersigned counsel and hereby state, aver, and request that the Honorable Court declare the impending cockfighting prohibition in Puerto Rico to be unconstitutional and enjoin its enforcement.

On December 20, 2018, the federal government enacted the Agriculture Improvement Act of 2018, which prospectively extended the cockfighting prohibition to Puerto Rico and the territories of the United States. Agriculture Improvement Act, PL 115-334, Title XII, § 12616,

December 20, 2018, 132 Stat 4490.  Specifically, this act prospectively amended 7 U.S.C. § 2156 to make it a crime to practice or do just about anything related to cockfighting in Puerto Rico.

These amendments should be decreed unconstitutional for each of the following reasons: (i) the federal government did not have the power to enact such a prohibition, (ii) the prohibition violates the plaintiffs' rights to associate, (iii) the prohibition violates the plaintiffs' rights to travel, (iv) the prohibition violates the plaintiffs' due-process rights, and (v) the plaintiffs were deprived of their property without just compensation Thus, the plaintiffs seek a declaratory judgement finding the prohibition to be unconstitutional and unenforceable.  In the alternative, the plaintiffs request just compensation per the Fifth Amendment as a result of their deprivation of property.  In addition, the plaintiffs seek equitable relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction.

## I.   JURISDICTION AND VENUE

1. The Honorable Court has federal-question jurisdiction over this case as it stems from the Constitution and laws of the United States.  *See* 28 U.S.C. § 1331.

2. Venue is proper as the defendants are "officer[s] or employee[s] of the United States or any agency thereof acting in [their] official capacity or under color of legal authority, or an agency of the United States, or the United States" and the District of Puerto Rico is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  *See* 28 U.S.C. § 1391(e)(1)(B).

## II.    PARTIES

### A.  Plaintiffs

  **i.    Asociación Cultural y Deportiva del Gallo Fino de Pelea (hereinafter "the Association")**

3.  The Association is a non-profit corporation organized under the laws of Puerto Rico.

4.  The Association's headquarters is located in Carr. 17. Km 0.6 salida para Aguas Buenas, Cidra PR 00739.

5.  The Association's board of directors is composed of President Dr. Jeovhanni Nieves Rivera, Vice President Juan R. Rivera Rivera (also known as Abuelo Pepito), Secretary Dr. Carlos A. Disdier Rodríguez, Subsecretary Luis R. Lasalle, Treasurer Odalys Rosado de Jesús, Subtreasurer Angel L. Torres Hernández, Event Promoter Ramón L. Santiago Quiñones (also known as Monchito Imperio), Event Coordinator Carlos Aponte Torres (also known as Junito Cidrita), "Gallero" Daniel Rodríguez, and "Gallero" Carlos Morales Velázquez.

6.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

7.  The Association is composed of a collection of members from diverse backgrounds with the common goal of celebrating and preserving the tradition, culture, and economic benefits of cockfighting.

8.  The Association's members have standing to sue on their own behalf.

9. No individual participation by the Association's members is required to assert the claims or request the relief herein.

10. The Association has no adequate remedy at law. The only remedies available are a declaratory judgment deeming the cockfighting prohibition unconstitutional and the enjoining of its enforcement.

### ii. Ángel Manuel Ortiz Díaz

11. Plaintiff Ángel Manuel Ortiz Díaz (hereinafter "Mr. Ortiz") is an 87-year-old American citizen who is a resident of Bayamon, Puerto Rico, and is otherwise *sui juris*.

12. Mr. Ortiz has been engaged in cockfighting for 65 years.

13. Mr. Ortiz owns two cockpits ("galleras") in Puerto Rico. Mr. Ortiz has owned one of them for 36 years. These two cockpits provide employment to a total of 34 people, which include referees, "healers," assistants, security personnel, spur cutters, and custodians.

14. Mr. Ortiz is duly authorized by the Recreation and Sports Department of Puerto Rico, Cockfighting Affairs Office, and is licensed as an owner and operator of cockpits.

15. Mr. Ortiz is also a lifetime breeder and currently owns more than 200 gamecocks. Since he was 22 years old, cockfighting has been his life, his only significant source of income, and an important way of celebrating his culture.

16. Mr. Ortiz has standing to bring about this lawsuit. Mr. Ortiz has suffered an injury fairly traceable to the defendants' conduct that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

17. The cockfighting ban will put Mr. Ortiz out of business and without any means to support himself. The prohibition will deprive Mr. Ortiz of his liberty and property rights and

result in an estimated $1,000,000 loss.  At 87 years old, Mr. Ortiz has little to no possibility of ever finding another job, especially with Puerto Rico's stagnant economy.

18. Despite the fact that the prohibition has yet to become effective, Mr. Ortiz is already suffering its effects as he no longer has a reasonable way to maintain, support, or sell these gamecocks.  Mr. Ortiz's business cannot succeed in an economy where all of his clients and business associates are gradually moving away from the business in preparation of the ban, which will come into effect in a few short months.  Furthermore, Mr. Ortiz will lose his lawfully-obtained cockfighting properties and is gradually being deprived of his protected liberty and property interests.

19. Once the prohibition comes into effect, Mr. Ortiz will be subject to criminal prosecution if he continues to engage in or sponsor cockfighting in any way.

20. Moreover, Mr. Ortiz will be forced to terminate all his employees, which will deprive them of their only source of income.

21. Needless to say, the enactment of this prohibition has and will continue to impact his life, liberty, income, happiness, and health in a substantial and disastrous way.

22. Mr. Ortiz has no adequate remedy at law.  The only remedies available are a declaratory judgment deeming the cockfighting prohibition unconstitutional and the enjoining of its enforcement.

### iii.   John J. Olivares Yace

22. The plaintiff John J. Olivares Yace (hereinafter "Mr. Olivares") is an American citizen, resident of Chicago, Illinois, and is otherwise *sui juris*.

23. Mr. Olivares currently works for Coca-Cola as quality controller, but also invests in gamecocks and pays others to breed and resell them.

24. Mr. Olivares has been a cockfighting enthusiast ("gallero") and breeder for over 45 years. He travels 2 to 3 times a year to Puerto Rico to attend cockfights and participate in cockfighting.

25. Mr. Olivares has standing to challenge the prohibition as he has suffered an injury fairly traceable to the defendants' conduct that is likely to be redressed by a favorable judicial decision. *See Spokeo,* 136 S. Ct. at 1547.

26. This prohibition will put Mr. Olivares out of the cockfighting business. The prohibition will deprive Mr. Olivares of his liberty and property rights and result in substantial economic losses.

27. Despite the fact that the prohibition has yet to become effective, Mr. Olivares is already suffering its effects as he no longer has a reasonable way to maintain, support, or sell his gamecocks. Mr. Olivares' business cannot succeed in an economy where all of his clients and business associates are gradually moving away from the business in preparation of the prohibition, which will come into effect in a few short months. Furthermore, Mr. Olivares is gradually being deprived of his protected liberty and property interests.

28. Once the prohibition comes into effect, Mr. Olivares will be subject to criminal prosecution if he continues to engage in or sponsor cockfighting in any way.

29. Needless to say, the enactment of this law has and will continue to impact his life, liberty, income, and happiness in a substantial way.

30. Mr. Olivares has no adequate remedy at law. The only remedies available are a declaratory judgment deeming the cockfighting prohibition unconstitutional and the enjoining of its enforcement.

### iv.    Ángel Luis Narváez Rodríguez

31. The plaintiff Ángel Luis Narváez Rodríguez (hereinafter "Mr. Narváez") is an American citizen, a resident of Vega Baja, Puerto Rico, and otherwise *sui juris*.

32. The cockfighting industry has been Mr. Narváez's full-time employment for 27 years and is currently his only source of income.  Mr. Narváez earns between $500 and $600 for three days of work a week.  Currently, Mr. Narváez works in two cockpits known as Gallera Club de Hatillo and Gallera Grande, which are located in Hatillo, Puerto Rico and Corozal, Puerto Rico, respectively.

33. Mr. Narváez is licensed by the Recreation and Sports Department of Puerto Rico, Cockfight Affairs Office as both a pit judge and a registration judge.

34. Mr. Narváez has standing to challenge the prohibition as he has suffered an injury fairly traceable to the defendants' conduct that is likely to be redressed by a favorable judicial decision. *See Spokeo*, 136 S. Ct. at 1547.

35. Although the prohibition has not become effective, Mr. Narváez is currently suffering anxiety and depression as a result of the impending cockfighting prohibition.  Mr. Narvaez will lose his source of income and, considering the dire economic situation in Puerto Rico, he will have very little opportunity of finding another job.  Mr. Narváez will be forced to start over after 27 years in the business.  Cockfighting is Mr. Narváez's life and livelihood and they are being taken away from him even though he has no voting representation to combat this.

36. Once the prohibition becomes effective, Mr. Narváez will be subject to criminal prosecution if he engages in cockfighting in any way.  Mr. Narváez is being deprived of his ability to legally sustain himself and his family.

37. The impact of this prohibition on Mr. Narváez's life, liberty, income, and health is substantial and disastrous.

38. Mr. Narváez has no adequate remedy at law.  The only remedies available are a declaratory judgment deeming the cockfighting prohibition unconstitutional and the enjoining of its enforcement.

### v.    José Miguel Cedeño

39. The plaintiff José Miguel Cedeño (hereinafter "Mr. Cedeño") is an American citizen, resident of Trujillo Alto, Puerto Rico, and is otherwise *sui juris*.

40. In addition to being a catholic priest, Mr. Cedeño has been an active cockfighting enthusiast ("gallero") and currently owns more than 100 gamecocks.

41. For Mr. Cedeño, cockfighting is more than a sport—it is his livelihood.  Through cockfighting, he expresses his devotion to Puerto Rican culture.  Furthermore, cockfighting is Mr. Cedeño's one and only hobby and the cockfighting community is his family.

42. With the prohibition against cockfighting, Mr. Cedeño will be deprived of his right to freely associate with others in the cockfighting community and of his right to express his cultural identity. Consequently, the prohibition will negatively impact his way of life and health.

43. Mr. Cedeño has no adequate remedy at law.  The only remedies available are a declaratory judgment deeming the cockfighting prohibition unconstitutional and the enjoining of its enforcement.

**B. Defendants**

    **i.    President Donald Trump in his Official Capacity**

44. President Donald Trump is the highest-ranking official of the United States of America's executive branch, which is the branch of government responsible for implementing the unconstitutional cockfighting prohibition.  The United States Department of Justice and the United States Department of Agriculture are both entities of the executive branch, which place them ultimately under the president's control.

    **ii.    United States of America**

45. The United States of America by way of congressional and presidential action enacted Section 12616 of the Agriculture Improvement Act of 2018, which amended 7 U.S.C. § 2156 to unconstitutionally extend the cockfighting ban to Puerto Rico and the territories of the United States.

    **iii.    Attorney General William P. Barr in his Official Capacity**

46. The Attorney General William P. Barr is the highest-ranking official of the United States Department of Justice, which is one of the departments of the executive branch responsible for implementing the unconstitutional cockfighting prohibition in Puerto Rico and the territories of the United States.

    **iv.    United States Department of Justice**

47. The United States Department of Justice is one of the departments of the executive branch responsible for implementing the unconstitutional cockfighting prohibition in Puerto Rico and the territories of the United States.

    **v.    Secretary of Agriculture Sonny Perdue in his Official Capacity**

48. The Secretary of Agriculture Sonny Perdue is the highest-ranking official of the United States Department of Agriculture, which is one of the departments of the executive branch responsible for implementing the unconstitutional cockfighting prohibition in Puerto Rico and the territories of the United States.

    **vi.**    **United States Department of Agriculture**

49. The United States Department of Agriculture is one of the departments of the executive branch responsible for implementing the unconstitutional cockfighting prohibition in Puerto Rico and the territories of the United States.

## III.    THE UNITED STATES AND PUERTO RICO—A HISTORICAL OVERVIEW

50. "The legal relationship between Puerto Rico and the United States is far from clear and fraught with controversy." *United States v. Lopez Andino*, 831 F.2d 1164, 1168 (1st Cir. 1987). "We readily concede that Puerto Rico occupies a relationship to the United States that has no parallel in our history." *Examining Bd. of Engineers, Architects, and Surveyors v. Flores*, 426 U.S. 572, 596 (1976). "[T]he framework is furnished by Puerto Rico's constitutional history, a skein of statutes and precedents as tangled as any in our history." *Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 6 (1st Cir. 1992).

51. Puerto Rico became a Spanish colony shortly after it was "discovered" by Christopher Columbus in 1493. Puerto Rico remained a Spanish colony for over 400 years.

52. On December 10, 1898, months after the end of the Spanish-American War, the United States "acquired" Puerto Rico from Spain by way of a peace treaty. At this point, Puerto Rico "became subject to Congress' plenary authority under the Territorial Clause of the Constitution." *Trailer Marine Transport Corp. v. Rivera Vazquez*, 977 F.2d 1, 6-7 (1st Cir. 1992); U.S. Const. art. IV, § 3, cl. 2.

53. After "[a] brief interlude of military control," on April 12, 1900, Congress enacted the Foraker Act, which established a temporary government in Puerto Rico.  *See* 31 Stat. 77; *see also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 671 (1974).  Under the Foraker Act, the United States retained considerable control over the affairs of Puerto Rico and its citizens.  *See Id.*

54. Thereafter, the Jones Act was enacted on March 2, 1917.  *See* 39 Stat. 951.  The Jones Act empowered the residents of Puerto Rico to have somewhat more authority over their local affairs.  Additionally, the act gave residents of Puerto Rico many of the United States' constitutional protections—albeit in a statutory fashion.  In summary, the Jones Act restructured Puerto Rico's government, created a local bill of rights, and granted American citizenship to residents of Puerto Rico.  *Id.*

55. "The aim of the Foraker Act and the [Jones] Act was to give Puerto Rico full power of local self-determination with autonomy similar to that of the states and incorporated territories."  *People of Puerto Rico v. Shell Co.*, 302 U.S. 253, 261-62 (1937) (citing *Gromer v. Standard Dredging Co.*, 224 U.S. 362, 370 (1912); *People of Porto Rico v. Rosaly y Castillo*, 227 U.S. 270, 274 (1913)).

56. The next progression was when Congress enacted the Elective Governor Act of 1947, "which allowed the residents of Puerto Rico to elect their own governor, within the framework previously set by the Foraker and Jones Acts."  *United States v. Mercado-Flores*, 109 F. Supp. 3d 467, 470 (D.P.R.) (Gelpí, J.).  "Up to this moment, under both Spanish and American control of the island, Puerto Ricans had never elected the island's governor."  *Id.*

57. The evolution continued on July 3, 1950, when the Federal Relations Act was enacted. *See* Pub. L. 600. "This legislation, offered in the 'nature of a compact,'" empowered Puerto Rico to draft their own constitution as long as it provided a republican form of government and bill of rights. *Examining Bd.*, 426 U.S. at 593; *see also* 48 U.S.C. §§ 731b and 731c.

58. "Congress approved the proposed constitution after adding, among other things, a condition that any amendment or revision of the document be consistent with 'the applicable provisions of the Constitution of the United States.'" *Examining Bd.*, 426 U.S. at 593-94; 66 Stat. 327. "The condition was accepted, the compact became effective, and Puerto Rico assumed 'Commonwealth' status. This resulted in the repeal of numerous provisions of the [Jones] Act of 1917, including the bill of rights that Act contained." *Id.*

59. Notwithstanding this "Commonwealth" label, Puerto Rico is still "constitutionally a territory." *Franklin California Tax-Free Tr. v. Puerto Rico*, 805 F.3d 322, 344 (1st Cir. 2015), aff'd, 136 S. Ct. 1938 (2016).

60. With minor exceptions, all American citizens domiciled in Puerto Rico are excluded from the democratic processes of the United States. This means having no vote for the president and no vote for any congressman with law-making authority. To be clear, this rule also applies to American citizens who move to Puerto Rico. Accordingly, Puerto Rico—a country of American citizens—is at the mercy of congressman and presidents that it cannot elect.

61. As a result of this odd political status, the U.S. Constitution does not apply to Puerto Rico in full force. However, the Supreme Court of the United States has recognized and

decided that the fundamental rights found in the U.S. Constitution do apply to Puerto Rico. *In re Conde Vidal*, 818 F.3d 765, 766 (1st Cir. 2016).

62. While the federal government does have law-making authority over Puerto Rico, this power is not absolute. Federal law cannot violate a person's fundamental constitutional rights.

## IV. COCKFIGHTING IN PUERTO RICO

63. The history of cockfighting reaches back to a time before Jesus Christ. *See* Puerto Rico Gamecocks of the New Millennium Act, H.B. 1396, Act 98 (2007).

64. Even before cockfighting ever became a sport, the fighting cock was worshipped as a deity by the Ancient Syrians, Greeks, and Romans. *Id.* These gamecocks were associated with the gods Apollo, Mercury, and Mars. *Id.* "Magellan claimed that in Borneo, the bird was so sacred, that no one could eat its flesh." *Id.*

65. About 3,000 years ago, cockfighting was already popular with the Phoenicians, Hebrews, and Canaanites. *Id.* Cockfighting was a national sport in ancient Greece. *Id.* In Egypt, during the time of Moses, cockfighting was a favorite pastime. *Id.*

66. "During the height of Greek civilization, Themistocles—a general who was preparing to drive away the invading Persians—decided to hold a cockfight the night before the battle to inspire his men by showing the courageous nature of the fighting cock." *Id.*

67. "Julius Caesar led Rome into enjoying the sport of cockfighting. He was the first citizen of Rome to be an enthusiast of the sport. Caesar ultimately introduced cockfighting into England." *Id.*

68. "In the 16th century, cockfighting was flourishing in England. During the time of King Henry VIII, cockfights were held at Whitehall Palace." *Id.* "At its very height of

popularity, even the clergy encouraged the sport." *Id.* "[I]n the British Isles there still exists a breed of gamecocks known as Charles II that is a highly sought after bird by breeders." *Id.*

69. "In Spain, cockfighting has existed for the longest period of time. . . . Today, cockfighting is a popular sport in Bilbao, Oviedo, Madrid, Barcelona, Valencia, and the Canary Islands." *Id.*

70. American Presidents George Washington, Thomas Jefferson, Abraham Lincoln, and Andrew Jackson were lovers of the sport. *Id.* It is interesting how three of these four presidents are sculpted into Mount Rushmore National Memorial. Even the White House has previously hosted cockfighting activities and events. *Id.* Further, Delaware's state bird is a gamecock breed. *Id.*

71. Cockfighting is also considered culturally important in Mexico, Dominican Republic, and Nicaragua. *Id.*

72. It appears that cockfighting was introduced to Puerto Rico by Spain since the beginning of colonization (early 1500s at the latest). *Id.* It was officially established as a sport in Puerto Rico on April 5, 1770, by Spanish Governor Don Miguel de Muesas. *Id.* In 1825, the Spanish General Miguel de la Torre created the first official cockfighting regulation in Puerto Rico. *Id.*

73. In 1898, the United States "acquired" Puerto Rico from Spain by way of a peace treaty at the end of the Spanish-American War. Cockfighting was banned once the Americans arrived in Puerto Rico. *Id.* Cockfighting continued illegally until Governor Robert Gore (an American) "declared cockfighting an Official Sport in Puerto Rico" in 1933. *Id.*

74. "Cockfighting is part of the Puerto Rican patrimony and folklore.  From the time of Spanish dominion, *boricuas* placed their wagers [on] their favorite gamecock, this being a family activity which has been taken from one generation to the next."  *Id.* (emphasis in original).

75. "When speaking of the sport of cockfighting, the name of Puerto Rico is one of the first names that come out, since our island is deeply attached to such sport."  *Id.*

76. Cockfighting is so ingrained into Puerto Rican culture that it has spawned common day-to-day expressions.  For instance, "yo voy a mi gallo" literally translates to "I root for my gamecock," but is commonly used when rooting for an individual or team in any competitive environment.  *See Id.*

77. Denise Quiñones, a Puerto Rican beauty queen and winner of the Miss Universe Pageant, used a costume inspired by Puerto Rico's gamecocks.  *Id.*

78. The gamecock is to Puerto Rico what the bald eagle is to the United States.

79. There are approximately 90 cockpits ("galleras") in Puerto Rico.

80. The United States Department of the Interior National Park Service authorized "Beaks and Spurs: Cockfighting in Puerto Rico," into the National Park Service's National Register of Historic Places.  https://www.nps.gov/nr/feature/places/64501213.htm.

81. Cockfighting in Puerto Rico is a 100 million dollar industry and generates thousands of jobs, which makes it indispensable to its economy, especially in this difficult economic climate.  *See Id.*

82. Puerto Rico recognizes and accepts the cultural and financial benefits of cockfighting, which is why it is currently regulated and taxed.  Nevertheless, the United States has a different idea.

## V.    THE CHALLENGED LAW

83. On December 20, 2018, the Agriculture Improvement Act of 2018 took effect.  Congress passed the bill and President Trump signed it into law even though Puerto Rico—a country of American citizens—has no voting representation in Washington.  *See* Agriculture Improvement Act, PL 115-334, December 20, 2018, 132 Stat 4490.

84. A small section of the massive bill prospectively amended 7 U.S.C. § 2156, which would extend the federal cockfighting prohibition to Puerto Rico and the territories of the United States.  The amendments are set to take effect on December 20, 2019.

85. The law will make it a crime in Puerto Rico to sponsor or exhibit an "animal" in an "animal fighting venture."  7 U.S.C. § 2156(a)(1).  The definition of "animal" includes "live bird," which encompasses gamecock.  *See* 7 U.S.C. § 2156(g) (current law); 7 U.S.C. § 2156(f) (future law).  An "animal fighting venture" is defined as an "event, in or affecting interstate commerce, that involves a fight . . . between at least 2 animals for purposes of sport, wagering, or entertainment."  *Id.*  Each violation of this section is a Class D Felony where the person may be sentenced up to 5 years in prison, ordered to pay a stiff fine (usually up to $250,000), or both.  *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(a), 3559(a)(4), and 3571.

86. Moreover, it is a crime in Puerto Rico for someone to "sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture."  7 U.S.C. § 2156(b).  Each violation is a Class D Felony where the person may be sentenced up to 5 years in prison, ordered to pay a large fine (usually up to $250,000), or both.  *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(a), 3559(a)(4), and 3571.

87. Further, the law also makes it a crime in Puerto Rico to "sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture." 7 U.S.C. § 2156(e) (current law); 7 U.S.C. § 2156(d) (future law). Each violation is a Class D Felony where the person may be sentenced up to 5 years in prison, ordered to pay a hefty fine (usually up to $250,000), or both. *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(a), 3559(a)(4), and 3571.

88. Additionally, the law also deems it a crime in Puerto Rico to use the mail or "any instrumentality of interstate commerce for commercial speech for purposes of advertising an animal" or the sharp instruments described previously in any way that furthers "an animal fighting venture except as performed outside the limits of the States of the United States." 7 U.S.C. § 2156(c). The law defines "State" as "any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States." 7 U.S.C. § 2156(g) (current law); 7 U.S.C. § 2156(f) (future law). The law defines "instrumentality of interstate commerce" as "any written, wire, radio, television, or other forms of communication in, or using a facility of, interstate commerce." *Id.* Each violation is a Class D Felony where the person may be sentenced up to 5 years in prison, ordered to pay an expensive fine (usually up to $250,000), or both. *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(a), 3559(a)(4), and 3571.

89. The law also makes it a crime in Puerto Rico to simply attend an animal fighting venture. 7 U.S.C. § 2156(a)(2)(A). Each violation is a Class A Misdemeanor where the person may be sentenced up to a year in prison, ordered to pay a hefty fine (usually up to

$100,000), or both.  *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(b), 3559(a)(4), and 3571.

90. Finally, the law also deems it a crime in Puerto Rico to "cause someone under the age of 16 to attend an animal fighting venture."  7 U.S.C. § 2156(a)(2)(B).  Each violation is a Class E Felony where the person may be sentenced up to 3 years in prison, ordered to pay a stiff fine (usually up to $250,000), or both.  *See* 7 U.S.C. § 2156(j) (current law); 7 U.S.C. § 2156(i) (future law); 18 U.S.C. §§ 49(c), 3559(a)(4), and 3571.

91. Each of these provisions should be declared unconstitutional and unenforceable for the reasons set forth in this lawsuit.

## VI.   INCONSISTENCIES OF THE PROHIBITION

92. Cockfighting is a recognized, regulated, and taxed sport in Puerto Rico.  The industry generates over a 100 million dollars on an island struggling to recover from Hurricane María, an endless recession, and notorious government corruption.

93. In the sport of cockfighting, a gamecock's death is a rare occurrence.  In contrast, hunting and fishing are sports where the killing of animals is the norm.  The irony is that hunting and fishing are commonly practiced on full stomachs.  Nevertheless, these sports are accepted and regulated in the United States because of tradition and their economic benefits—the same reasons why cockfighting is regulated and legal in Puerto Rico.

94. According to the United States Fish and Wildlife Service, "[i]n the United States, hunting is both a wildlife management tool and an outdoor tradition." https://www.fws.gov/hunting/.  The United States justifies hunting and fishing as sports because the "[f]unds from licenses, federal duck stamps, and excise taxes on hunting

equipment and ammunition help purchase and set aside millions of acres for wildlife." *Id.*

95. It is also interesting that the United States leaves much of the regulation of hunting and fishing to state agencies. "In additional to hunting programs, state agencies have jurisdiction over: animal control and management of non-endangered wildlife species; management of State parks, forests and recreation areas; and game warden information." *Id.*

96. There is a sharp distinction between the treatment of cockfighting and the treatment of hunting and fishing. The United States legalizes, regulates, and leaves the ultimate decision to the states with respect to hunting and fishing; however, when it comes to cockfighting, Congress inexplicably bans the sport without regard to its tradition or economic benefits. This is especially concerning when considering that Puerto Rico has no voting power in Congress.

97. The law's definition of "animal fighting venture" even excludes "any activity the primary purpose of which involves the use of one or more animals in hunting another animal." 7 U.S.C. § 2156(g) (current law); 7 U.S.C. § 2156(f) (future law).

98. Gamecocks are congenitally aggressive towards males of the same species. Therefore, whether or not cockfighting exists as a sport, there will be gamecocks fighting each other in nature. The gamecock breeds used for cockfighting have no other significant economic value as their meat is hard and not considered good cuisine. In addition, their aggression does not make for good pets.

99. Furthermore, all gamecock breeds used in Puerto Rico have a genetic quality that make them incapable of feeling pain in the same way as other similar birds.

100.     As a result, this prohibition will effectively exterminate these gamecock breeds. Gamecock owners in Puerto Rico will have no reasonable way to support or sell the birds as they are widely considered useless or impractical to maintain for any other purpose. This law, seen by many to protect these animals, actually does them more harm than help—especially when considering that the sport merely allows them to do what they would be doing in nature anyway.

## VII.    CLAIMS FOR RELIEF

### A.  The Prohibition Exceeds Congress' Authority to Regulate

101.     All preceding paragraphs and allegations are hereby incorporated by reference as if fully set forth herein.

102.     "Federalism was our Nation's own discovery. The Framers split the atom of sovereignty. It was the genius of their idea that our citizens would have two political capacities, one state and one federal, each protected from incursion by the other." *Saenz v. Roe*, 526 U.S. 489, 504 n. 17 (1999) (citing *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring)).

103.     The federal government's power is limited while the power of the states and Puerto Rico is residual.  As such, the power of the states and Puerto Rico is supreme so long as it does not intrude upon federal interests.  "The aim of the Foraker Act and the [Jones] Act was to give Puerto Rico full power of local self-determination with an autonomy similar to that of the states and incorporated territories." *Shell*, 302 U.S. at 261-62 (citing *Gromer*, 224 U.S. at 370; *Rosaly*, 227 U.S. at 274); *see also Trailer Marine*, 977 F.2d at 7 ("Today, the government of the Commonwealth of Puerto Rico in many respects resembles that of a state. It has an elected governor and legislature, and its

legislature has powers akin to those exercised by the states. Puerto Rico has immunity to suit in common with state governments. Except for various tax code provisions and certain other exceptions, federal statutes apply in Puerto Rico, as they do in any state, unless otherwise provided. Citizens of Puerto Rico, like citizens of the states, are citizens of the United States. The United States guarantees Puerto Rico a republican form of government and Puerto Rico is bound to respect the rights, privileges and immunities of all citizens." (citations omitted)).

104.    The only possible constitutional justification for a cockfighting prohibition is the Commerce Clause.  The Constitution empowers Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The commerce power authorizes Congress to (1) "regulate the use of the channels of interstate commerce"; (2) "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities"; and (3) "regulate those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).  The Commerce Clause applies in full force to Puerto Rico.  *Trailer Marine*, 977 F.2d at 6-9.

105.    "Despite the broad nature of Congress' power under the Commerce Clause, the Supreme Court has emphasized that such power is 'subject to outer limits,' and that the Clause and the Court's decisions construing the Clause do not obliterate the distinction between 'what is truly national and what is truly local.'"  *United States v. Gibert*, 677 F.3d 613, 622 (4th Cir. 2012) (citing *Lopez*, 514 U.S. at 557, 567-68).

106.     Nothing in the congressional record pertaining to the amendment of 7 U.S.C. § 2156 reflects or states the congressional interest in extending the cockfighting prohibition to Puerto Rico or the territories of the United States.

107.     As a matter of fact, The House lawmakers that introduced the Bill to amend §2156 were Reps. Peter Roskam, R-Ill., Earl Blumenauer, D-Ore., Rodney Davis, R-Ill., Rick Nolan, D-Minn., Kevin Yoder, R-Kan., Tony Cárdenas, D-Calif., Steve Knight, R-Calif., Rep. Brad Sherman, D-Calif., and Rep. Vern Buchanan, R-Fla.

108.     A Press Release of the Humane Society of the United States covered the lawmakers' statements regarding the Bill:

Rep. Roskam said, "Cruelty to animals is not a form of entertainment; it's a criminal act that puts both animals and humans at risk and is often associated with other criminal activities. Our treatment of animals is a reflection of who we are and we have a responsibility to treat animals in a humane manner. Strengthening the law against cockfighting and other forms of animal fighting allows us to better protect animals from this type of violence as we move to end the cruelty of animal fighting."

Rep. Blumenauer, a lead sponsor of several of the prior upgrades in the law, said, "Congress enacted federal animal fighting laws to protect animals from needless cruelty and communities from associated crimes such as illegal drug dealing and human violence. Animals used for fighting are often drugged to heighten their aggression and forced to keep fighting even after they've suffered grievous injuries such as broken bones, deep gashes, punctured lungs and pierced eyes."

Rep. Davis said, "The United States has long prohibited animal fighting and this bill simply ensures there is no ambiguity in the law and that it applies to all U.S. territories. In addition to preventing animal cruelty, strengthening the law against cockfighting helps safeguard against the spread of diseases in poultry such as avian flu, since birds used in cockfighting are particularly vulnerable. After a 2002 outbreak of exotic Newcastle disease in the U.S., which cost taxpayers nearly $200 million and the poultry industry many millions more, the USDA implicated cockfighting as a culprit in spreading the disease."

Rep. Nolan said, "As a society, we have an obligation to protect those without a voice, including animals who are cruelly forced to fight one another. This legislation affirms and ensures that animal fighting has no place in any jurisdiction within the United States and it will help safeguard our human communities."

Rep. Cárdenas said, "It has long been the policy of the United States to deter and discourage dogfighting and cockfighting, which are inhumane spectacles of cruelty. With this upgrade of the law, we advance that policy in a consistent way in every part of our nation."

Rep. Knight said, "I am proud to be an original cosponsor of this legislation that will help enforce our laws and defend our values. The PACE Act recertifies America's commitment to the humane treatment of animals. Dogfighting, cockfighting and other forms of animal cruelty not only subject animals to immense amounts of suffering, but these practices also degrade the moral fabric of our communities. This bill came to fruition after an incident near my district that revealed a massive underground cockfighting ring. Los Angeles County Sheriff's Department displayed incredible professionalism and skill in dismantling this organization. However, it is clear that more action must be taken by Congress to better enforce laws preventing this type of activity. I look forward to working with my colleagues to push forward this bipartisan legislation."

Rep. Sherman said, "I have long fought to eradicate dogfighting and cockfighting throughout the United States. Earlier this year, in Los Angeles, law enforcement conducted one of the largest raids ever of a cockfighting stable. We must remain vigilant and strengthen laws against this form of animal cruelty."

Rep. Buchanan said, "Stopping animal cruelty and preventing animal fighting should be a bipartisan issue important to all of us. I look forward to working with Congressman Roskam and my colleagues in the House to advance this common-sense measure."

Press Release November 1, 2017 **Federal legislation introduced to combat animal fighting in the U.S. territories** https://www.humanesociety.org/news/federal-legislation-introduced-combat-animal-fighting-us-territories (last seen on July 17, 2019)

109.    As these statements reflect, the intention of the §2156 amendment was limited to fight animal cruelty and not the regulation of interstate commerce.

110.    Given that all 50 states had already banned cockfighting, there is no rational basis to support any congressional interstate commerce interest in expanding the prohibition to Puerto Rico or territories of the United States.

111.    The expansion of the prohibition constitutes a congressional overreach into the police power of Puerto Rico and the territories to regulate sports, animal cruelty, and

domestic animals.  The law now displaces state policy choices by criminalizing conduct that is accepted and regulated by Puerto Rico.

112.     There is no evidence or finding of fact in the legislative history of the amendments to 7 U.S.C. § 2156 establishing that the animal fighting ventures carried out in the territories have a substantial effect on interstate commerce.

113.     Prior to the 2018 amendments, the statute's penalties contained exceptions for Puerto Rico and any state where cockfighting was legal.  *See* 7 U.S.C. § 2156(a)(3) and (d) (current law).  This serves as evidence that the Animal Welfare Act's jurisdictional hook was always limited to activities "in interstate or foreign commerce."

114.     Even if we were to presume that cockfighting constitutes animal cruelty, the issue of animal cruelty is not an area in which Congress has the power to regulate under the explicit or implicit powers delegated by the United States Constitution.

115.     It can be fairly stated that the amendment is a free-rider with no consideration whatsoever as to the threat to Puerto Rico's culture, history, and traditions.  Needless to say, there is a severe negative effect on various components of the local economy that provide services related to the cockfighting sport—such as veterinarians, game-fowl breeders, agricultural stores, and trophy and award manufacturers, among others.

116.     For all of the foregoing reasons, this Honorable Court should enter a declaratory judgment finding the prohibition to be unconstitutional.  28 U.S.C. § 2201(a) (". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another

adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

117. Further, as the plaintiffs have no adequate remedy at law, the Honorable Court should grant relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the law's enforcement. *See* Fed. R. Civ. P. 65.

## B. Violation of Plaintiffs' Rights to Associate

118. All preceding paragraphs and allegations are hereby incorporated by reference as if fully set forth herein.

119. Federal law may not violate a person's First Amendment rights. *See* U.S. Const. amend. I. First Amendment rights apply to those domiciled in Puerto Rico. The First Amendment protects, *inter alia*, freedom of association. *Id.* Freedom of association protects "political, economic, religious or cultural matters . . . and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460–61 (1958).

120. "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.

121. "Everyone has the right freely to participate in the cultural life of the community [and] to enjoy the arts." Universal Declaration of Human Rights, Art. 27.

122. The prohibition infringes upon the plaintiffs' right to freedom of association. Cockfighting plays an important role in the plaintiffs' ways of life. The plaintiffs have a right to perpetuate their culture through assembly and cockfighting, which is being taken away by the federal government.

25

123.     The defendants have the burden of demonstrating a compelling government interest and demonstrating that the law is narrowly tailored to achieve that interest.  The defendants cannot carry their burden on either front.

124.     The law criminalizes the sponsoring or exhibiting of an animal in an animal fighting venture.  Also, the law criminalizes the attending or causing an individual under the age of 16 to attend an animal fighting venture.

125.     These laws make it a crime for the plaintiffs to do what they have been doing for a significant portion of their lives: attending, participating in, and bringing others to cockfighting events.  This restricts their right to associate, enjoy, and perpetuate their culture, which is a violation of the plaintiffs' constitutional rights.

126.     For all of the foregoing reasons, this Honorable Court should enter a declaratory judgment finding the prohibition to be unconstitutional.  28 U.S.C. § 2201(a) (". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

127.     Further, as the plaintiffs have no adequate remedy at law, the Honorable Court should grant relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the law's enforcement.  *See* Fed. R. Civ. P. 65.

**C.  Violation of Plaintiffs' Right to Travel**

128.     All preceding paragraphs and allegations are hereby incorporated by reference as if fully set forth herein.

129.     The Supreme Court of the United States has not clearly defined where the right to travel freely within the United States comes from in the constitution.  See Saenz v. Roe, 526 U.S. 489, 501 (1999) ("For the purposes of this case, therefore, we need not identify the source of that particular right in the text of the Constitution. The right of 'free ingress and regress to and from' neighboring States, which was expressly mentioned in the text of the Articles of Confederation, may simply have been conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created." (citations omitted)).

130.     "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.

131.     The law makes it "unlawful for any person to knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture."  7 U.S.C. § 2156(b).

132.     Moreover, the law makes it "unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of the bird for use in an animal fighting venture."  7 U.S.C. § 2156(e) (current law); 7 U.S.C. § 2156(d) (future law).

133.     Finally, the law decrees "to knowingly use . . . any instrumentality of interstate commerce for commercial speech for purposes of advertising an animal" or an instrument described in the prior paragraph for "use in an animal fighting venture, promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States."  7 U.S.C. § 2156(c).

134.     The plaintiffs' constitutional right to travel freely within the United States has been restricted.  This is a fundamental constitutional right that applies to those who are domiciled in Puerto Rico.  The plaintiffs will be unable to practice and perpetuate their culture by these restrictions.  The defendants' interests in imposing the prohibition are nonexistent or constitutionally insufficient to justify these restrictions.

135.      For all of the foregoing reasons, this Honorable Court should enter a declaratory judgment finding the prohibition to be unconstitutional.  28 U.S.C. § 2201(a) (". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

136.     Further, as the plaintiffs have no adequate remedy at law, the Honorable Court should grant relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the law's enforcement.  *See* Fed. R. Civ. P. 65.

**D.  Violation of Plaintiffs' Due Process Rights**

137.     All preceding paragraphs and allegations are hereby incorporated by reference as if fully set forth herein.

138.     The Fifth Amendment of the United States Constitution states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  This is a fundamental right that applies to those domiciled in Puerto Rico.

139.     "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.

140.     The prohibition renders plaintiffs' property practically valueless as gamecocks are not considered to have economic value for any other purpose as their inherent aggression makes for poor pets and their hard meat makes for poor cuisine.

141.     The prohibition takes away the plaintiffs' fundamental rights to property, liberty, and cultural identity without due process.  The prohibition will not allow the plaintiffs to do what they have known, lived, and loved for years: participate in cockfighting.

142.     The defendants' interests to impose the prohibition are nonexistent or constitutionally insufficient to comply with due process.

143.     For all of the foregoing reasons, this Honorable Court should enter a declaratory judgment finding the prohibition to be unconstitutional.  28 U.S.C. § 2201(a) (". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

144.     Further, as the plaintiffs have no adequate remedy at law, the Honorable Court should grant relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the law's enforcement.  *See* Fed. R. Civ. P. 65.

**E.  Violation of the Takings Clause**

145.     All preceding paragraphs and allegations are hereby incorporated by reference as if fully set forth herein.

146.     The Fifth Amendment of the United States Constitution prohibits the taking of private property without just compensation.  This is a fundamental right that applies to those who are domiciled in Puerto Rico.

147.     "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.

148.     The prohibition effectively takes the plaintiffs' real and personal property without just compensation.  As a result of this prohibition, the plaintiffs are no longer able to maintain, support, or sell their gamecocks because these breeds are considered by the market to be useless for any non-cockfighting purpose.  Their aggression does not make them good pets and their hard meat does not make for good cuisine.

149.     Moreover, the plaintiffs' cockpits ("galleras") are no longer able to be maintained, supported, or sold at their true value as these properties exist and are regulated for the specific purpose of cockfighting.

150.     The defendants have taken the plaintiffs' real and personal property acquired over many years without providing just compensation.

151.     For all of the foregoing reasons, this Honorable Court should enter a declaratory judgment finding the prohibition to be unconstitutional.  28 U.S.C. § 2201(a) (". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").

152.     Further, as the plaintiffs have no adequate remedy at law, the Honorable Court should grant relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the law's enforcement. *See* Fed. R. Civ. P. 65.

153.     In the alternative, the Honorable Court should order the defendants to pay the plaintiffs just compensation pursuant to the Fifth Amendment.

## VIII.     PRAYER FOR RELIEF

**WHEREFORE,** the plaintiffs respectfully request that the Honorable Court grant the following remedies:

1- Enter a declaratory judgment finding the amendments to 7 U.S.C. § 2156 prohibiting cockfighting in Puerto Rico to be unconstitutional for any or all of the following reasons: (i) the federal government did not have the power to prohibit cockfighting in Puerto Rico, (ii) the prohibition violates the plaintiffs' rights to associate, (iii) the prohibition violates the plaintiffs' rights to travel, (iv) the prohibition violates the plaintiffs' due-process rights, and (v) the plaintiffs were deprived of their property without just compensation;

2- In the alternative, pursuant to the terms of the Fifth Amendment, order the defendants to pay the plaintiffs just compensation in exchange for the deprivation of their property;

3- Enter a temporary restraining order enjoining the enforcement of the unconstitutional cockfighting prohibition in Puerto Rico;

4- Enter a preliminary injunction enjoining the enforcement of the unconstitutional cockfighting prohibition in Puerto Rico;

5- Enter a permanent injunction enjoining the enforcement of the unconstitutional cockfighting prohibition in Puerto Rico; and

6- Grant any other additional relief deemed just and proper.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico this 1st day of August, 2019.

*s/ Edwin Prado-Galarza, Esq.*
Attorney at Law
Prado, Núñez & Asociados, P.S.C.
403 Del Parque St., Suite 8
San Juan, PR 00912
USDCPR NO. 208804
T. (787) 977-1411
F. (787) 977-1410
Pradolaw10@gmail.com

*s/ Manuel Franco, Esq.*
Attorney at Law
Prado Law Offices
513 W. Colonial Dr. Unit 5
Orlando, FL 32804
USDCPR No. 302406
(407) 420-7926
(787) 977-1411
Manuel.Franco.Law@gmail.com

## Unsworn Declaration under Penalty of Perjury
### 28 U.S. Code §1746

"I declare under penalty of perjury under the laws of the United States of America, that I have read the allegations made in this verified complaint and attest that the foregoing factual allegations regarding the cockfighting activities for which I claim are true, correct and of my personal knowledge. Executed in San Juan, Puerto Rico, this 1st day of August, 2019

Dr. Jeovhanni Nieves Rivera
Asociación Cultural y Deportiva del Gallo Fino de Pelea

Angel Manuel Ortíz Díaz

John J. Olivares Yace

Angel Luis Narváez Rodríguez

José Miguel Cedeño